U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed August 25, 2008**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **INTERNATIONAL GALLERIES, INC.,** | § | **CASE NO. 06-30306-BJH-7** |
| | § | |
| **Debtor.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the application by Dan Lain ("Lain"), the Chapter 7 trustee, to employ

Lain, Faulkner & Co., P.C. ("Lain Faulkner") *nunc pro tunc* to the date of the conversion of the

International Galleries, Inc. ("IGI") bankruptcy case from Chapter 11 to Chapter 7.  The Court held

a hearing on the retention application on July 30, 2008.  The Court has core jurisdiction over the

retention application in accordance with 28 U.S.C. §§ 1334 and 157(b).  This Memorandum Opinion

and Order contains the Court's findings of fact and conclusions of law.

**I.      BACKGROUND FACTS**

On January 31, 2006, the debtor, IGI, filed its voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing this bankruptcy case (the "Case"). Almost immediately thereafter, Lain was appointed as Chapter 11 Trustee of IGI (the "Chapter 11 Trustee"). Although the Chapter 11 Trustee did not seek to retain counsel in the Case, he did seek to retain the accounting firm of which he is a partner, Lain Faulkner, to assist him in administering the Case. Specifically, on March 13, 2006, an application to retain Lain Faulkner was filed, as were all required supporting documents including an affidavit of disinterestedness. That affidavit disclosed no connection that would render Lain Faulkner not disinterested. No party-in-interest objected to the Chapter 11 Trustee's proposed retention of Lain Faulkner in the Case and the Court entered an Order authorizing the retention on April 13, 2006.

The Chapter 11 Trustee attempted to market IGI's assets as a going concern to no avail. Concluding that there was no reason to continue the Case under Chapter 11, on April 14, 2006, the Chapter 11 Trustee filed his motion to convert the Case to a Chapter 7 liquidation. An Order was entered converting the Case to Chapter 7 on May 22, 2006. Thereafter, Lain was appointed as the Chapter 7 Trustee (the "Chapter 7 Trustee").

The Chapter 7 Trustee elected to retain counsel and on May 23, 2006, he filed an application to retain Winstead Sechrest & Minick, P.C. ("Winstead"), former counsel to the creditors' committee in the Chapter 11 case, as his counsel. In addition, the Chapter 7 Trustee concluded that he needed the accounting services of Lain Faulkner in the Chapter 7 case. Accordingly, he directed Winstead to file an application to retain Lain Faulkner in the Chapter 7 case. Unbeknownst to the Chapter 7 Trustee, Winstead failed to file the Lain Faulkner retention application and, accordingly, no order

authorizing the Trustee's retention of Lain Faulkner was entered in the Chapter 7 case.[1]

Lain Faulkner first discovered Winstead's error about 2 years later, when it began preparing its first interim fee application in the Case.  The Chapter 7 Trustee immediately contacted his counsel about the absence of a retention application or order for Lain Faulkner on the docket sheet in the Chapter 7 case and learned that Winstead had failed to file the retention application as instructed. However, the Chapter 7 Trustee was assured by Elmquist that the failure was harmless because Lain Faulkner had been retained in the Case prior to conversion.  In other words, Elmquist advised the Chapter 7 Trustee that no further retention of Lain Faulkner was required due to the retention order that had been entered by the Court while the Case was pending under Chapter 11.

Not realizing that they had never been formally retained while the Case was pending under Chapter 7, Lain Faulkner provided valuable services to the Chapter 7 Trustee.  The fact that Lain Faulkner was assisting the Chapter 7 Trustee was well-known to the Court and other parties-in-interest.

On May 27, 2008, Thomas DuBois ("DuBois"), a prepetition creditor of IGI filed his objection to the Lain Faulkner interim fee application on various grounds, including the fact that no retention order had ever been entered authorizing the Chapter 7 Trustee's retention of Lain Faulkner. The hearing on Lain Faulkner's interim fee application commenced on May 28, 2008.  Counsel for the Chapter 7 Trustee argued that DuBois's objections should be overruled because, among other

---

[1]The former Winstead partner in charge of the engagement, David Elmquist ("Elmquist") testified that the Trustee instructed him to file the application to retain Lain Faulkner and that through a miscommunication between an associate and a paralegal at Winstead, the Lain Faulkner application, while drafted, did not get filed.  However, according to Elmquist, he discovered the error about 2 months later and, without consulting the Trustee, he made the decision not to file the Lain Faulkner retention application, concluding that it was not required as a matter of law given Lain Faulkner's prior retention during the pendency of the Chapter 11 case.

reasons, no retention order was required in light of the Court's prior Order authorizing the Chapter 11 Trustee's retention of Lain Faulkner while the Case was pending under Chapter 11. The hearing on Lain Faulkner's interim fee application could not be concluded within the parties' original time estimate. As a result, the hearing was continued to a date the parties were to obtain from the Court's courtroom deputy. Prior to adjourning the hearing, however, the Court expressed its preliminary view that because the Chapter 11 Trustee's appointment terminated upon conversion of the Case to Chapter 7 in accordance with § 348(e) of the Bankruptcy Code, so too had the Chapter 11 Trustee's retention of Lain Faulkner.[2] Thus, from the Court's perspective, it appeared that Lain Faulkner could not be compensated for work done while the Case was pending under Chapter 7 because they were never employed in the Chapter 7 case in accordance with § 327 of the Bankruptcy Code.

Given the Court's preliminary view that Lain Faulkner needed to be retained in the Chapter 7 case to be paid, not surprisingly, prior to the resumption of the hearing on Lain Faulkner's interim fee application, the Chapter 7 Trustee filed the instant application to employ Lain Faulkner in the Chapter 7 case on a *nunc pro tunc* basis to the date of conversion. Equally unsurprisingly, DuBois objected to the proposed *nunc pro tunc* employment of Lain Faulkner.

## II.    LEGAL ANALYSIS

The outcome of the Chapter 7 Trustee's application to employ Lain Faulkner as his accountants *nunc pro tunc* to the date of conversion is controlled by the Fifth Circuit's decision in *In re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir. 1983). In *Triangle Chemicals*, an attorney for a corporation filed a Chapter 11 petition for that corporation but did not file an application for his

---

[2] Section 348(e) of the Bankruptcy Code provides that "conversion of a case under section . . . 1112 . . . of this title terminates the service of any trustee or examiner that is serving in the case before such conversion."

own retention as attorney for the debtor "because of the attorney's misunderstanding of the law." *Id*. at 1282.   The attorney thereafter provided valuable services to the estate and filed a fee application.  The bankruptcy judge, upon learning that there was no order of the court employing the attorney, denied the application, reasoning that the court was without authority to enter a *nunc pro tunc* order.  *Id*.  On appeal, the Fifth Circuit held that

> where through oversight the attorney has neglected to obtain [the bankruptcy court's] prior approval [for employment] but has continued to perform services for the debtor/debtor in possession (many of them as here under the eye of the court itself), the bankruptcy court retains equitable power in the exercise of its sound discretion, under exceptional circumstances, to grant such approval *nunc pro tunc*, upon proper showing, and to award compensation for all or part of the services performed by such attorney that have subsequently benefitted the debtor's estate and, consequently, its creditors.

*Id*. at 1289.

Because the matter arose by virtue of the bankruptcy court's grant of summary judgment against the fee applicant, the *Triangle Chemicals* court did not decide whether, on the facts before it, the bankruptcy court should use its discretion to grant the application *nunc pro tunc*.  Rather, the case was remanded to the bankruptcy court to make that determination.  *Id*. at 1291.  However, the Fifth Circuit proceeded to give the bankruptcy court some guidance on the appropriate outcome when it stated that "confusion as to the applicable law" is a "basis . . . that may allow the bankruptcy court to allow the attorney . . . some compensation for his services as the attorney for the debtor itself."  *Id*. at 1290.  Moreover, the Fifth Circuit noted that "the previous lack of certainty as to [the law] may well weigh in favor of the bankruptcy court's exercise of its sound discretion to enter such an order and to allow compensation."  *Id*.

The attorney in *Triangle Chemicals* read § 327 and assumed it applied only to the trustee.

He overlooked § 1107(a).  In discussing "confusion as to the applicable law," the *Triangle Chemicals* court noted that "the matter was not entirely free from doubt at the time" because Interim Bankruptcy Rule 1001(a)(5) made applicable former Chapter XI: Rule 11-31 which provided that compensation may be allowed "to the attorney for the debtor *and* debtor-in-possession."  So the attorney could have thought of himself as employed by the debtor, but not the debtor-in-possession (which would require court approval).

In discussing the *Triangle Chemicals* court's exceptional circumstances test, the court in *In re Whitemere Development Corporation*, 65 B.R. 734 (Bankr. D. N.J. 1986) identified six factors that should be considered in deciding whether "the need for strict control of the administration of the bankruptcy estate may be satisfied," thus warranting the grant of a *nunc pro tunc* retention application.  Those factors are:

> (1) whether the necessary elements of 11 U.S.C. § 327, including no adverse interest and disinterested person status, have been met;
>
> (2) whether the services rendered were necessary;
>
> (3) whether the applicant could be considered to be an intermeddler or volunteer;
>
> (4) whether the applicant was recognized by the bankruptcy court and others involved in the case as the legal representative of the debtor-in-possession or trustee;
>
> (5) whether any prejudice to others involved in the case is demonstrated; and
>
> (6) whether services rendered by the applicant benefitted the estate.

*Id*. at 738-39.

Applying those factors here, they all weigh in favor of granting the application.  First, there is no dispute that Lain Faulkner is and was disinterested in the Case.  In fact, they were properly retained as accountants to the Chapter 11 Trustee in the Case.  Second, the services of Lain Faulkner

were necessary. While DuBois contends that some of Lain Faulkner's services were not necessary, he does not contend that an accountant was unnecessary in the Chapter 7 case. Rather, he contends that a less expensive accounting firm should have been retained by the Chapter 7 Trustee upon conversion. Thus, the Court concludes that the Chapter 7 Trustee needed to retain an accounting firm to assist him in the administration of the estate. The Court can, and will, address the reasonableness of Lain Faulkner's fees as accountant to the Chapter 7 Trustee when ruling on its fee application. Third, Lain Faulkner was not an intermeddler or a volunteer in the Chapter 7 case. They thought they had been retained by the Chapter 7 Trustee, as did the Chapter 7 Trustee himself. Fourth, Lain Faulkner was recognized by the Court and others involved in the Case as the Chapter 7 Trustee's accountants. Fifth, while DuBois contends that less expensive accountants could have been retained in the Case once it converted to Chapter 7, that may or may not have been practical given Lain Faulkner's prior service as accountants to the Chapter 11 Trustee. In any event, however, the Court can address the relative expense of Lain Faulkner or some other accounting firm when ruling on Lain Faulkner's fee application. Finally, at least some of Lain Faulkner's services benefitted the Chapter 7 estate. Once again, while DuBois contests the value of some of Lain Faulkner's services, he does not contend that none of its services was of value. And, once again, the Court can address the relative benefit of Lain Faulkner's services when ruling on Lain Faulkner's fee application.

One further argument by DuBois and some case law relied upon by him should be addressed. DuBois asserts that the conduct here was intentional, not an oversight, thus violating the holding in *Triangle Chemicals*. In making this argument, however, DuBois inappropriately blurs the distinction between Elmquist's intentional act and Lain Faulkner's oversight. While it is

true that Elmquist made the intentional decision not to bring Winstead's mistake to its client's attention – *i.e.*, Elmquist decided not to tell the Chapter 7 Trustee that it had failed to file the Lain Faulkner retention application as instructed – and then Elmquist concluded, without consulting the Chapter 7 Trustee, that no further retention application was required for Lain Faulkner as a matter of law, neither the Chapter 7 Trustee nor Lain Faulkner was given the opportunity to participate in those decisions. The Court is satisfied that the failure to file a retention application in the Chapter 7 case was the result of an oversight by Lain Faulkner. Lain Faulkner thought a retention application had been filed as the Chapter 7 Trustee had instructed and that an order authorizing the retention had been entered. Moreover, Lain Faulkner is frequently retained in bankruptcy cases in this district and is generally thoughtful in insuring that its retention applications are filed promptly. The failure here is unusual.

Moreover, DuBois' cases are all from the bankruptcy court in the District of Idaho. The Ninth Circuit, like the Fifth Circuit, has an "exceptional circumstances" exception, for when "the professional (1) satisfactorily explains his failure to receive prior judicial approval; and (2) demonstrates that his services benefitted the bankrupt estate in a significant manner." *In re Melton*, 353 B.R. 901, 904 (Bankr. D. Idaho 2006). In *Melton*, the court found no exceptional circumstances where there was an emergency filing to save the debtor's home and the professionals (an attorney and accountant) misinterpreted FRBP 1007(c) to allow for retention of professionals up to 15 days after the filing. The attorney filed the retention applications on the 15th day following the petition date. In denying *nunc pro tunc* retention to either professional, the *Melton* court distinguished those facts from *In re Soderquist*, 349 B.R. 23 (Bankr. D. Idaho 2005), where the court had approved a *nunc pro tunc* retention application. In *Soderquist*, the attorney's long-time paralegal

left his employment and the new paralegal "for some unknown reason" failed to file the application for employment. Counsel later came upon the unfiled application in the client's file and promptly filed the *nunc pro tunc* application. The *Soderquist* court rejected the U.S. Trustee's argument that this was negligence or inadvertence and therefore not an exceptional circumstance. Rather, the court found that the attorney's explanation was satisfactory, where (1) the attorney had a history of filing timely employment applications, (2) there was no evidence that any party was prejudiced by the tardy filing, (3) the attorney promptly sought approval of employment upon discovering the error, and (4) the omission occurred during an unusually busy period in the attorney's solo law practice when he also lost an experienced staff member.

From this Court's perspective, this case is much more like *Soderquist* than *Melton*.

DuBois also relies upon *In re Taylor Quality Concrete, Inc.*, 359 B.R. 273 (Bankr. D. Idaho 2007) and *In re Adkins*, No. 05-00953-TLM, 2008 WL 282345 (Bankr. D. Idaho Jan. 31, 2008). In *Taylor*, the attorneys representing the debtor had no significant prior exposure to bankruptcy law other than representing creditors. They were unaware of the need to file employment applications under § 327. When they realized their error, they filed a *nunc pro tunc* application. The court did not find this to be an exceptional circumstance. "Surely, an attorney's self-imposed lack of awareness of the legal requirements of chapter 11 should not justify avoidance of the consequences of failure to comply with the law." *Id*. at 276. The court distinguished the facts before it from *Soderquist*, where "the lawyer's failure to file the employment application . . . was truly an error in fact." *Taylor*, 359 B.R. at 276.

In *Adkins*, the debtor had a pre-bankruptcy lawsuit pending in a different state. The lawyers retained to handle the lawsuit learned of the bankruptcy filing from opposing counsel. The debtor's

lawyer then relied on the debtor's statement that the case was almost closed and she would receive a discharge, after which the bankruptcy estate would have no claim on her share of any settlement. Counsel did not file an employment application until it came time for the bankruptcy court to approve the settlement. The *Adkins* court was irked that neither the trustee nor the proposed lawyer briefed the *nunc pro tunc* issue in spite of the court's request that they do so. The court found no exceptional circumstance because counsel learned of the bankruptcy but failed to follow up and learn what that entailed. "At best, lack of prior experience or familiarity with bankruptcy law justifies a modest delay while reliable information can be obtained. It does not excuse neglect or failure to inquire." *Adkins*, 2008 WL 282345 at *4.

*Taylor* and *Adkins* are simply distinguishable factually.

## III.    CONCLUSION

Because the Court finds that Lain Faulkner has satisfactorily explained why prior approval of its retention was not received and has shown that at least some of its services benefitted the Chapter 7 estate in a significant manner, the Court concludes that the *Triangle Chemicals'* "exceptional circumstances" test has been met here. Accordingly, the Chapter 7 Trustee's request for *nunc pro tunc* approval of Lain Faulkner's retention is granted. The Court will consider DuBois' arguments about the reasonableness of Lain Faulkner's fees and the benefit of its services when ruling on the interim fee application.

**SO ORDERED.**

### # # # END OF MEMORANDUM OPINION AND ORDER # # #